UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAYMOND WILLOUGHBY, DAMIEN WARD, and DAN COOPER, Individually, and On Behalf of All Similarly Situated Persons, | Case No. |
| Plaintiffs, | Judge |
| v. | Magistrate Judge |
| VILLAGE OF FOX LAKE, a Municipal Corporation, CHIEF MICHAEL BEHAN, in his Official Capacity on behalf of VILLAGE OF FOX LAKE, VILLAGE OF ROUND LAKE, a Municipal Corporation, VILLAGE OF ROUND LAKE BEACH, a Municipal Corporation, CITY OF McHENRY, a Municipal Corporation, JOHN DOE POLICE OFFICERS, JOHN DOE DEPUTY SHERIFFS, JOHN DOE STATE POLICE AGENTS, and JOHN DOE FEDERAL BUREAU OF INVESTIGATIONS AGENTS, | JURY DEMAND |
| Defendants. | |

## COMPLAINT AT LAW

NOW COME, the Plaintiffs, RAYMOND WILLOUGHBY, DAMIEN WARD and DAN CONNER, Individually, and on behalf of all other similarly situated persons, by and through their attorneys, GREGORY E. KULIS & ASSOCIATES, LTD, and complaining against the Defendants, VILLAGE OF FOX LAKE, a Municipal Corporation, CHIEF MICHAEL BEHAN, in his Official Capacity on behalf of VILLAGE OF FOX LAKE, VILLAGE OF ROUND LAKE, a Municipal Corporation, VILLAGE OF ROUND LAKE BEACH, a Municipal Corporation, CITY OF McHENRY, a Municipal Corporation, JOHN DOE POLICE OFFICERS, JOHN DOE DEPUTY SHERIFFS, JOHN DOE STATE POLICE AGENTS, and JOHN DOE FEDERAL BUREAU OF INVESTIGATIONS AGENTS, states as follows:

1

## JURISDICTION AND VENUE

1. This Court has jurisdiction to adjudicate this case pursuant to 28 U.S.C. §1331, because it arises under the United States Constitution, and 28 U.S.C. §1343, because Plaintiffs seek relief under 42 U.S.C. §1983.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§1391 and 1392 because Defendants are located within this judicial district and events giving rise to this action took place in this judicial district.

## PARTIES

**Plaintiffs**

3. Plaintiff DAMIEN WARD is a United States citizen and resident of Lake County, Illinois. On or about September 1, 2015, he was arrested and/or detained in conjunction with the alleged "murder" of Fox Lake Police Lieutenant Charles Joseph Gliniewicz. As will be discussed herein, Gliniewicz's death was not a homicide, but rather a suicide. The only description of the "suspects" that Gliniewicz was pursuing just before his suicide was so vague that it cannot be said that this Plaintiff met the physical description for purposes of establishing probable cause to stop, question, arrest, or otherwise detain and deprive him of his liberty. He brings this claim on his own behalf and on behalf of a putative class of persons similarly arrested or detained as will be described herein.

4. Plaintiff RAYMOND WILLOUGHBY is a United States citizen and resident of Lake County, Illinois. On or about September 1, 2015, he was arrested and/or detained in conjunction with the alleged "murder" of Fox Lake Police Lieutenant Charles Joseph Gliniewicz. As will be discussed herein, Gliniewicz's death was not a homicide, but rather a suicide. The only description of the "suspects" that Gliniewicz was pursuing just before his suicide was so

vague that it cannot be said that this Plaintiff met the physical description for purposes of establishing probable cause to stop, question, arrest, or otherwise detain and deprive him of his liberty. He brings this claim on his own behalf and on behalf of a putative class of persons similarly arrested or detained as will be described herein.

5. Plaintiff DAN COOPER is a United States citizen and resident of Lake County, Illinois. On or about September 2, 2015, he was arrested and/or detained in conjunction with the alleged "murder" of Fox Lake Police Lieutenant Charles Joseph Gliniewicz. As will be discussed herein, Gliniewicz's death was not a homicide, but rather a suicide. The only description of the "suspects" that Gliniewicz was pursuing just before his suicide was so vague that it cannot be said that this Plaintiff met the physical description for purposes of establishing probable cause to stop, question, arrest, or otherwise detain and deprive him of his liberty. He brings this claim on his own behalf and on behalf of a putative class of persons similarly arrested or detained as will be described herein.

6. Plaintiffs also seek certification of a putative class consisting of all other persons that stopped, questioned, arrested, or otherwise detained and deprived of their liberty as purported suspects in the nationally-publicized murder of a police lieutenant from September 1, 2015 and continuing through September 5, 2015. Said persons may be referenced collectively throughout the remainder of this pleading as the "Plaintiff class," while the aforementioned date range may be referred to throughout the remainder of this pleading as the "relevant timeframe." As will be described herein, the Plaintiff class members were each detained, without probable cause, during the relevant timeframe in conjunction with the murder of a police lieutenant that did not occur.

7. As such, class certification is proper pursuant to Fed. R. Civ. P. 23 because the legal and factual allegations amongst these persons will be the same or sufficiently similar and typical – i.e. that the actions of the various Defendants as will be described herein deprived them of the right to be free from unreasonable searches and seizures as protected by the Fourth and Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983 in pursuit of the alleged "murderer" of Fox Lake Police Lieutenant Charles Joseph Gliniewicz. The precise number of citizens detained in conjunction with the fictitious murder of Lt. Gliniewicz is presently unknown, but upon information and belief, may number in the hundreds, thus making joinder of individual claims against individual law enforcement officers and/or departments impractical. Likewise, the individually-named Plaintiffs will dutifully and adequately represent the interests of the individual arrestees and detainees comprising this class.

**Defendants**

8. Defendants herein are or were sworn law enforcement officers whose respective employers were signatories to the "Major Crimes Taskforce Lake County, Illinois Intergovernmental Agreement" (hereinafter "Major Crimes Taskforce Agreement"). Signatories to the agreement include numerous municipalities in Lake County (including, but not limited to, Defendant municipalities Fox Lake, Round Lake, Round Lake Beach and McHenry), as well as the Lake County Sheriff's Office, the Illinois State Police, and the Lake County State's Attorney. Pursuant to the agreement, the Task Force provides comprehensive investigative services to signatory member departments in accepted cases upon a request from the chief of police in the municipality where a specified occurrence takes place. Also pursuant to the Major Crimes Taskforce Agreement, each signatory department is to be represented on the task force.

4

9. Defendants JOHN DOE POLICE OFFICERS were duly appointed police officers of numerous municipalities in Lake County, Illinois, including but not limited to Fox Lake, Round Lake, Round Lake Beach and McHenry whose municipal employers were signatories to the Major Crimes Taskforce Agreement. At all times relative hereto, they were acting within the scope of their respective employment and under color of law. These Defendants may be collectively referred to at various points herein as "Municipal Officer Defendants."

10. Defendants JOHN DOE DEPUTY SHERIFFS were duly appointed Lake County Deputy Sheriff officers whose involvement stems from the Lake County Sheriff's Office's involvement with the Major Crimes Taskforce. At all times relative hereto, they were acting within the scope of their respective employment and under color of law. These Defendants may be collectively referred to at various points herein as "Deputy Sheriff Defendants."

11. Defendants JOHN DOE STATE POLICE AGENTS were duly appointed Illinois State Police Agents whose involvement stems from the Illinois State Police's involvement with the Major Crimes Taskforce. At all times relative hereto, they were acting within the scope of their respective employment and under color of law. These Defendants may be collectively referred to at various points herein as "State Police Defendants."

12. At all relevant times, Defendant CHIEF MICHAEL BEHAN was the Chief of the Fox Lake Police Department acting within the scope of his employment and under color of law and contributed to the wrongs committed.

13. At all times relevant herein, the Defendants VILLAGES OF FOX LAKE, ROUND LAKE, ROUND LAKE BEACH and the CITY OF McHENRY were municipal corporations duly incorporated under the laws of the State of Illinois.

## COMMON FACTS

**The Suicide of Lt. Charles Joseph Gliniewicz and Subsequent Investigation**

14. On the morning of September 1, 2015, Fox Lake Police Lieutenant Charles Joseph Gliniewicz ("Gliniewicz") committed suicide by shooting himself twice in a secluded area in or near Fox Lake, Illinois. Prior to taking his own life, Gliniewicz sent a radio transmission to the Fox Lake police department, fictitiously stating that he was in pursuit of three individuals that he described only as two "male whites" and one "male black."

15. Gliniewicz was not in pursuit of anyone, however, but rather was in the process of staging his suicide to look like a homicide. Gliniewicz's actions are now universally believed to have been motivated by a probe of the Fox Lake police department by its Village Manager, which was then on the verge of discovering that Gliniewicz had embezzled funds from a Village program he spearheaded that specializes in education and training for youths in the community with an interest in law enforcement (commonly known as the "Explorer program").

16. Gliniewicz's death received immediate national media coverage and a vast, expansive joint investigation was immediately undertaken, with officers participating from numerous municipal police departments in Lake County, Illinois (pursuant to the Major Crimes Taskforce Agreement after the taskforce's involvement was requested by the Village of Fox Lake), as well as the Lake County Sheriff's Department, the Illinois State Police, and the Federal Bureau of Investigations.

17. As stated, however, the only information Gliniewicz conveyed with respect to his fictitious "murderers" was their race. Accordingly, the ensuing investigation proceeded without the benefit of any information regarding the suspects' location, destination, motivation, age, height, weight, build, physical features, hair length or color, or anything else that would

distinguish the suspects from the estimated approximately 70.1%[1] of Lake County residents fitting these threadbare descriptions.

18. The investigation continued for coming days and further, during which time as many as hundreds of persons (i.e. the putative Plaintiff class herein) were repeatedly stopped, questioned, arrested, or otherwise detained and deprived of their liberty as purported suspects in the nationally-publicized murder of a police lieutenant (which, again, did not actually occur).

19. Unbeknownst to the Plaintiffs or the public at large, there was good reason to suspect from the very outset that Gliniewicz's death was a suicide, and even the initial Fox Lake police department responders noted irregularities inconsistent with both that of a murder victim and what they professed to have understood of Gliniewicz's character.

20. In spite of such knowledge, the Fox Lake police department continued to perpetuate the narrative that Gliniewicz's death was a homicide, and continued to participate extensively in, and detain innocent citizens pursuant to, an investigation that they knew or had reason to know was pure fiction.

21. During this time, the municipal, county, state, and federal law enforcement officers assisting the Fox Lake police department in its fictitious investigation likewise continued to perpetuate the false homicide narrative and to detain innocent citizens while possessing information that no reasonable officer would regard as probable cause to arrest anyone for anything.

---

[1] Per 2015 U.S. Census Bureau data, 62.8% of respondents identified as "White alone, not Hispanic or Latino," while 7.3% of respondents identified as "Black or African American alone." *See* http://www.census.gov/quickfacts/table/PST045215/17097, retrieved Aug. 16, 2016.

**Additional *Monell* Allegations as to the Village of Fox Lake and Relating to Gliniewicz's Suicide**

22. Gliniewicz's suicide, set against the backdrop of an internal investigation and possible indictment, and the Fox Lake police department's response thereto, did not occur in isolation. To the contrary, the events giving rise to the instant action were the byproduct of rampant official misconduct rising to the level of a *de facto* policy of condoning such misconduct amongst Fox Lake police officers.

23. During his time with the Fox Lake police department, spanning approximately 30 years, Gliniewicz was the subject of numerous departmental and citizen complaints including, but not limited to:

   a. Work absence attributed to alcohol;
   b. Passing out drunk behind the wheel of his car and, after being assisted home by a police officer, subsequently reporting his vehicle as stolen the next day;
   c. Numerous suspensions for repeat tardiness and/or absence;
   d. Allegedly threatening to shoot a female dispatcher

24. Despite these repeated incidents of misconduct, Gliniewicz continued to rise through the ranks of the Fox Lake police department, eventually matriculating to the rank of Lieutenant.

25. The lack of attention to official misconduct was so pervasive that, on February 1, 2009, one or more anonymous members of the Fox Lake police department took what they referred to as the "extraordinary point" of reporting both Gliniewicz's misconduct, and Chief Michael Behan's lacking oversight, directly to the Mayor of Fox Lake.

26. The complaints, ranging in kind from sexual harassment to public drunkenness amongst others, also included alarming allegations of nepotism. In particular, the anonymous author(s) claimed to have complained to Chief Behan about Gliniewicz's actions, but were

8

"disappointed time and time again with Chief Behan's lack of action." Of particular note, the letter accused not only Gliniewicz, but also Behan of using their offices for improper purposes, alleging that "[o]n many arrests, the person being arrested has cautioned the officer about continuing the arrest because they were personal friends with 'Joey' [Lt. Gliniewicz] or 'Mikey' [Chief Behan]."

27. In spite of these serious allegations made directly to the mayor, Gliniewicz and Behan were permitted to remain in their supervisory and managerial positions for an additional six years.

28. In or around 2014, Anne Marrin began serving as Village Administrator of Fox Lake. Among her tasks in said capacity was to audit various divisions of the Village of Fox Lake, including the police department's Explorer program operating under Gliniewicz.

29. Throughout her tenue, she and Gliniewicz developed an acrimonious relationship. Pursuant thereto Gliniewicz openly considered such outrageous retaliatory measures as planting cocaine on Marrin and advocating for arranging a murder-for-hire scenario with a ranking gang member.

30. Gliniewicz's acrimony was, upon information and belief, driven by the fact that he had been embezzling funds from the Explorer program, misappropriating them for personal use, and feared that Marrin's investigation would uncover his criminal misconduct.

31. Upon information and belief, members of the Fox Lake police department up to and including Chief Behan were aware of Gliniewicz's embezzlement and did nothing to intervene.

32. In or around 2014 and 2015, the Fox Lake police department was beset with additional scandals, including allegations that Chief Behan failed to adequately investigate an

alleged excessive force incident, resulting in him being placed on administrative leave and ultimately retiring during the course of said investigation on August 26, 2015 – a mere week before Gliniewicz's suicide.

33. Despite his retirement, which formally occurred the day before Gliniewicz's death, Behan continued to exercise involvement and authority over the Fox Lake police department, including being physically present at the scene and at the department to assist on the date of Gliniewicz's suicide.

34. In or around August 2015, Marrin specifically requested the books and records of account for the Explorer program from Gliniewicz.

35. On August 31, 2015 at approximately 9:14 am, Gliniewicz sent a text message to Behan with respect to his embezzlement, stating that Marrin "has now demanded a complete inventory of exploder [*sic*] central and financial report…FML[2]."

36. Less than 24 hours after he despondently informed Behan that Marrin had requested a full inventory and accounting of his Explorer program, Gliniewicz committed suicide as previously discussed herein.

37. Upon information and belief, Behan and other Fox Lake police officers and other Fox Lake personnel either did not share Gliniewicz's history of misconduct and the department's history of ignoring his misconduct, diminished the significance of same, or encouraged that it not be considered in the investigation into his death. Perhaps most significantly, Behan, upon information and belief, did not share with investigators the aforementioned text message from Gliniewicz sent the morning before his suicide, which would have indicated a clear motive for suicide.

---

[2] Upon information and belief, an acronym meaning "f**k my life"

38. During this time, numerous putative Plaintiffs, including the individually-named Plaintiffs, were needlessly stopped, arrested, questioned, and otherwise detained and deprived of their liberties despite the fact that Defendants were in possession of information that clearly pointed to Gliniewicz's death as a suicide.

39. The cumulative effect of all of this was that Fox Lake's failure to adequately monitor, discipline, and supervise its officers resulted in a bizarre and tragic turn of events that resulted in as many as hundreds of citizens being deprived of their Constitutional rights without probable cause.

**Facts Pertaining to the Individually-Named Plaintiffs**

40. On the date of Gliniewicz's suicide, Plaintiff, RAYMOND WILLOUGHBY was traveling along the woods near his house when he was taken into custody and arrested by John Doe Police Officers.

41. The Plaintiff, RAYMOND WILLOUGHBY was not breaking any laws or committing any crimes.

42. The Plaintiff RAYMOND WILLOUGHBY was handcuffed, held on the scene for 1 to 2 hours and then transported him to the Round Lake Police Department where he was held for several more hours.

43. The Plaintiff requested and tried to leave but was told he could not because he was in custody.

44. After several hours, the Plaintiff RAYMOND WILLOUGHBY was released.

45. Also on said date, DAMIEN WARD was leaving his home in the morning when he was confronted by law enforcement of Fox Lake.

46. The Plaintiff, DAMIEN WARD, was not committing any crime or breaking any laws.

47. He was handcuffed and taken into custody for no apparent reason.

48. There were no facts to support a reasonable belief that he was involved in any crime or that he was involved in the shooting of Joseph Gliniewicz.

49. The Defendant JOHN DOE OFFICERS tried to enter his home without a search warrant.

50. The Defendant Officers ordered Plaintiff DAMIEN WARD to submit to a gunshot residue test.

51. The Plaintiff, after about two (2) hours was un-handcuffed and released.

52. On or about September 2, 2015 Plaintiff DAN COOPER was taken into custody by several of the Defendants.

53. The Plaintiff, DAN COOPER, was handcuffed and taken into the Fox Lake Police Station.

54. The Plaintiff, DAN COOPER, asked and tried to leave but was pushed around and told he couldn't leave.

55. The Plaintiff, DAN COOPER, had not committed any crimes nor broke any laws.

56. After approximately ten (10) hours, the Plaintiff, DAN COOPER, was released.

57. The actions seizing and taking the Plaintiffs, DAMIAN WARD, RAYMOND WILLOUGHBY, and DAN COOPER in custody was done without any probable cause.

58. Upon information and belief, numerous other individuals were unlawfully seized and/or taken into custody under circumstances similar to those of the individually-named Plaintiffs herein.

**COUNT I**
**FOURTH AMENDMENT AND SECTION 1983 UNLAWFUL SEARCHES AND SEIZURES/ARRESTS**

1-58   Plaintiff hereby incorporates paragraphs 1-58, inclusive of all subparagraphs, into this paragraph 61, as though fully set forth herein.

59.   With respect to the "Municipal Law Enforcement Officers," "County Law Enforcement Officers," and "State Law Enforcement Officers," this action is brought pursuant to the laws of the United States Constitution, specifically, 42 U.S.C. §1983 and §1988, and the laws of the State of Illinois, to redress deprivations of the Civil Rights of the Plaintiff, and accomplished by acts and/or omissions of the Defendants.

60.   With respect to the "Federal Law Enforcement Officers," this action is brought pursuant to the Fourth Amendment of the United States Constitution as applied by *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and its progeny.

61.   The Plaintiffs, RAYMOND WILLOUGHBY, DAMIAN WARD and DAN COOPER, were at all relevant times, United States citizens and residents of the State of Illinois.

62.   Each of the putative class member Plaintiffs were at all relevant times, United States citizens and/or residents of the State of Illinois.

63.   Plaintiff DAMIAN WARD was arrested and detained on September 1, 2015 by one or more of the Defendant officers in conjunction with the aforementioned investigation into the fictitious "homicide" of Lt. Gliniewicz.

64.   Plaintiff RAYMOND WILLOUGHBY was arrested and detained on September 1, 2015 by one or more of the Defendant officers in conjunction with the aforementioned investigation into the fictitious "homicide" of Lt. Gliniewicz.

65. Plaintiff DAN COOPER was arrested and detained on September 2, 2015 by one or more of the Defendant officers in conjunction with the aforementioned investigation into the fictitious "homicide" of Lt. Gliniewicz.

66. Each of the putative class member Plaintiffs were stopped, arrested, or otherwise detained by one or more of the Defendant officers between September 1, 2015 and September 5, 2015 in conjunction with the aforementioned investigation into the fictitious "homicide" of Lt. Gliniewicz.

67. Each of the individually-named and putative class Plaintiffs, at the times that they were detained, were not committing any crimes or violating any laws.

68. For reasons previously discussed herein, there was no probable cause to arrest or detain anyone for, or on suspicion of, the fictitious "homicide" of Lt. Gliniewicz.

69. The actions of the Defendants were intentional, willful, wanton and with malice.

70. By reason of the above-described acts of the Defendant Officers, the individually-named and putative class Plaintiffs sustained fear, anxiety, emotional pain and suffering, loss of liberty, and other damages.

71. The aforementioned acts of the Defendant Officers were willful, wanton, malicious, and done with the reckless indifference to and/or callous disregard for Plaintiff's rights and justify the awarding of exemplary and punitive damages.

72. The aforementioned acts the Defendant Officers violated the Plaintiff's Fourth and Fourteenth Amendment rights under the Constitution, and (except as to the "Federal Law Enforcement Officer" Defendants, who violated the Plaintiffs' Fourth Amendment rights pursuant to *Bivens, et. al*.), their rights protected by 42 U.S.C. 28 U.S.C. §1983.

WHEREFORE the Plaintiffs, RAYMOND WILLOUGHBY, DAMIAN WARD and DAN COOPER, Individually, and on behalf of all other similarly situated persons, pray for judgment against the Defendants, and for compensatory damages, punitive damages, attorneys' fees, and costs.

**COUNT II**
**SECTION 1983 UNCONSTITUTIONAL CUSTOMS, PRACTICES, AND POLICIES**
*Monell* Action Against Chief Michael Behan and the Village of Fox Lake

1-72. Plaintiff hereby incorporates paragraphs 1-72, inclusive of all subparagraphs, into this paragraph 75, as though fully set forth herein.

73. As previously discussed herein, the Fox Lake police department maintained a culture of official misconduct exemplified by, amongst other things, Chief Michael Behan's administrative leave and subsequent retirement amidst allegations of failure to properly investigate misconduct and Lt. Gliniewicz's own years of misconduct.

74. Said culture of misconduct is the direct and proximate result of the department's failure to adequately train and supervise its officers and failure to adequately investigate allegations of misconduct and administer effective punishment where appropriate.

75. Not only did Lt. Gliniewicz's repeated misconduct go unpunished, his repeated promotions suggest that such misconduct was actually tacitly rewarded.

76. Lt. Gliniewicz's misconduct, and the allegations of nepotism and failure to investigate towards Chief Behan, show that these were not isolated incidents, but rather indicative of a trend that evolved over time.

77. In the case of Lt. Gliniewicz, it evolved to the point of embezzling funds from Fox Lake's Explorer program and, when faced with possible discovery of his misdeeds, outlandish threats and ultimately, a suicide staged as a homicide.

78. The official misconduct described herein, and the Village's (including, but not limited to, Chief Behan) failure to take corrective measures amounts to a *de facto* official policy of condoning and failing to prevent, investigate, and discipline official misconduct.

79. Village Administrator Marrin implicitly acknowledged this *de facto* policy in a December 2015 news article detailing the Village's release of video footage depicting the incidents leading to Chief Behan's retirement, wherein she remarked that although reforms were under way, ""[c]ertainly the events of the last several months in the Fox Lake Police Department have reminded us that we can and should do a better job of fully being accountable to the public."[3]

80. The Plaintiffs herein were arrested and/or detained because the Fox Lake police department either did not inform its fellow investigating officers about Gliniewicz's misconduct and information indicative that his death was a suicide and not a homicide. Gliniewicz's suicide, in turn, was a desperate attempt to cover up his criminal embezzlement of funds, which was itself enabled by the Village of Fox Lake's decades of failing to supervise him and failure to effectively punish his misconduct and / or create a line of fictitious suspects who might unlawfully be convicted. As such, the Village of Fox Lake's *de facto* official policy of condoning and failing to prevent, investigate, and discipline official misconduct was the moving force behind the Plaintiffs' Constitutional injuries as described herein.

WHEREFORE the Plaintiffs, RAYMOND WILLOUGHBY, DAMIAN WARD and DAN COOPER, Individually, and on behalf of all other similarly situated persons, pray for judgment against the Defendants, CHIEF MICHAEL BEHAN, the VILLAGE OF FOX LAKE,

---

[3] *See* http://www.nbcchicago.com/news/local/Fox-Lake-Officials-to-Release-Video-of-Altercation-Between-Cop-Arestee-361576011.html, retrieved Aug. 24, 2016.

the Village of Round Lake and the Village of Round Lake Beach, and for compensatory damages, punitive damages, attorneys' fees, and costs.

Respectfully submitted,

By: /s/ Gregory E. Kulis

Gregory E. Kulis
Joshua S. Patrick
Gregory E. Kulis & Associates, Ltd.
30 North LaSalle Street, Suite 2140
Chicago, Illinois 60602
312-580-1830