IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RAYMOND WILLOUGHBY, <br> DAMIEN WARD, and DAN COOPER, | ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| | ) | No. 17 CV 2800 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| VILLAGE OF FOX LAKE, <br> COMMANDER GEORGE FILENKO, <br> JOHN DOE POLICE OFFICERS, <br> JOHN DOE DEPUTY SHERIFFS, <br> JOHN DOE STATE POLICE AGENTS, <br> and JOHN DOE FEDERAL BUREAU OF <br> INVESTIGATION AGENTS, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, George Filenko's motion to dismiss Count I of the Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted, and plaintiffs' motion for class certification is denied.

### BACKGROUND

In this action, plaintiffs allege that their Fourth Amendment rights were violated when they were arrested and detained in conjunction with the investigation that occurred after the death of Charles Joseph Gliniewicz, who was a police lieutenant for the Village of Fox Lake, Illinois (the "Village"). It was later revealed that Gliniewicz had staged his suicide to look like a homicide. It is alleged that prior to taking his own life, Gliniewicz sent a radio transmission to the Village police department falsely stating that he was in pursuit of three individuals, two "male whites" and one "male black." (ECF No. 93, 3d Am. Compl. ¶ 14.)

On December 21, 2017, the Court issued a Memorandum Opinion and Order denying the Village's motion to dismiss Count II of the Second Amended Complaint and granting defendant George Filenko's motion to dismiss Count I of the Second Amended Complaint. (ECF No. 92.) The Court assumes familiarity with that opinion and order and the facts and procedural history of this case.

With leave of court, plaintiffs filed a Third Amended Complaint. It contains the same claims plaintiffs previously asserted: a claim under 42 U.S.C. § 1983 for unlawful search and seizure in violation of the Fourth Amendment (Count I) and a *Monell* claim against the Village (Count II). The only difference between the Second and Third Amended Complaints is the addition of several paragraphs pertaining to defendant Filenko, an attempt to cure the deficiencies the Court previously discussed in its memorandum opinion. Filenko moves to dismiss the claim asserted against him. Plaintiffs move for class certification.

## DISCUSSION

**A.     Filenko's Motion to Dismiss Count I for Failure to State a Claim**

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 444, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

According to the Third Amended Complaint, Filenko was the Commander of the Lake County Major Crimes Task Force (the "Task Force"), which assisted the Village with the investigation of Gliniewicz's death. The Court previously dismissed plaintiffs' claim against

Filenko because plaintiffs did not allege facts from which it could be inferred that Filenko was personally involved in their arrests.

The doctrine of *respondeat superior* cannot be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights. *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). In order for a supervisor to be liable, he must be "personally responsible for the deprivation of the constitutional right." *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). To have personal involvement, the supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see." *Id.*

The Court held that plaintiffs' previous allegations against Filenko were threadbare and thus insufficient. In addition to those allegations, plaintiffs now allege the following:

- Filenko's personal involvement in the conduct complained of herein was more extensive than simply supervising the various involved officers, and rather must be considered in light of the nature and scope of the Major Crimes Taskforce agreement, separate and apart from Fox Lake's de facto policy which led to the unlawful detentions as has been, and will be, described herein.

- Once contacted by Fox Lake to assist in the investigation, Filenko (as commander of the task force) and the various officers comprising the task force acting under Filenko's direction began investigating leads in the manhunt for the fictitious "murderer," which included and predominantly consisted of, detaining and interviewing subjects.

- As part of said investigation, Filenko personally directed officers to detain specific persons for questioning.

- Filenko gave such directions despite the fact that he knew the only information provided by Gliniewicz of the purported "suspects" was their race, and that this could not possibly give rise to probable cause or reasonable suspicion to detain said persons, and as such, Filenko's actions were taken in bad faith and were willful and wanton in nature.

- Furthermore, as the investigation progressed, Filenko began to increasingly insert himself into the media narrative surrounding the high profile investigation and began giving regular interviews and/or press conferences, ostensibly updating the public on the nature of the investigation.

- As his media profile began to rise, Filenko began to exert increased pressure on his subordinates to locate the fictitious "murderer," despite the fact that he knew no probable cause or reasonable suspicion existed to detain anyone based upon Gliniewicz's description and the evidence known to the Defendants at the time.

- As a result thereof, more individuals were detained in conjunction with the investigation, despite the fact that the investigation had clearly stalled due to the lack of probable cause or reasonable suspicion and despite the fact that no such probable cause or reasonable suspicion existed in the first place.

- Filenko is thus personally liable as the individual directing specific officers to make specific arrests and detentions in spite of a clear lack of probable cause or reasonable suspicion.

(3d Am. Compl. ¶¶ 71-78.)

Essentially, plaintiffs now allege in a wordy manner that Filenko led the Task Force and generally gave orders to arrest and detain specific persons. Plaintiffs thus persist in impermissibly relying on the doctrine of *respondeat superior*. They fail to connect Filenko in any way to *their* arrests or detentions. They do not plead that Filenko directed their arrests or detentions or knew about them and facilitated, approved, condoned, or turned a blind eye to them. Accordingly, the Court grants Filenko's motion to dismiss the complaint as against him.

Filenko seeks a dismissal with prejudice, but plaintiffs request a dismissal without prejudice on the ground that further discovery may reveal more facts about Filenko's personal involvement. Although plaintiffs have already had multiple opportunities to state a claim against Filenko, it does not appear that discovery is complete. Filenko's dismissal therefore will be without prejudice, but without leave to replead at this time. If plaintiffs in good faith determine

after the completion of discovery that they can amend their complaint to allege facts that address the deficiencies of their claim against Filenko, they must seek leave to do so.

**B.      Plaintiffs' Motion for Class Certification**

To be certified, a proposed class must satisfy each requirement of Federal Rule of Civil Procedure 23(a) as well as one of the three conditions of Rule 23(b). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). The Rule 23(a) requirements are numerosity, typicality, commonality, and adequacy of representation. *Id.* After those four requirements are satisfied, proponents of a class seeking certification under Rule 23(b)(3)—the provision on which plaintiffs rely here—must also show that (1) questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) a class action is superior to other available methods of resolving the dispute. *Id.* Plaintiffs bear the burden of showing by a preponderance of the evidence that their proposed class satisfies the Rule 23 requirements. *See id.* Failure to meet any one of Rule 23's requirements precludes class certification. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). "[W]hen reviewing a motion for class certification, a court 'may not simply assume the truth of the matters as asserted by the plaintiffs,' but instead must receive evidence and resolve factual disputes as necessary to decide whether certification is appropriate." *Balderrama-Baca v. Clarence Davids & Co.*, 318 F.R.D. 603, 608 (N.D. Ill. 2017) (brackets omitted) (quoting *Messner*, 669 F.3d at 811).

In the opening pages of their motion, plaintiffs propose a class that consists of "all persons that were stopped, questioned, arrested, or otherwise detained and deprived of their liberty as purported suspects in the nationally-publicized murder investigation of Fox Lake police lieutenant Charles Joseph Gliniewicz from September 1, 2015 and continuing through

5

September 5, 2015." (ECF No. 90, Pls.' Mot. Class Certification at 1-2.) Later in their motion, plaintiffs revise the proposed class definition as follows: "[A]ll persons arrested and/or detained for questioning in conjunction with the death of Lt. Gliniewicz, *except* for those persons that were: (a) detained pursuant to probable cause for another offense; (b) already in custody at the time they were questioned; or (c) were the subject of credible information that he/they was/were involved in Gliniewicz's death provided by third parties." (*Id.* at 7.)

Rule 23(a) states first that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir.), *cert. denied sub nom. Mulvania v. Rock Island Cty. Sheriff*, 138 S. Ct. 361 (2017). The extent of plaintiffs' argument in their motion regarding numerosity is as follows:

> On September 7, [the Village] produced portions of the [Task Force's] investigative file that memorializes the investigation performed into the underlying shooting giving rise to this lawsuit. The portions produced were done pursuant to negotiations between the parties to limit the scope of Plaintiffs' production requests, and were subject to a motion for entry of a protective order that was granted on September 7.
> Included with the documents produced was a spreadsheet titled "Spreadsheet of Leads," which ostensibly categorizes the various leads that the various officers investigated. The leads are categorized as either belonging to "FL" or "CJIS."[1] The spreadsheet references 154 CJIS leads and 267 FL leads. While Plaintiffs concede that not every single individual mentioned therein is a putative class member, as some individuals were questioned based upon specific intelligence provided by members of the public, even if only half of the "FL" and "CJIS" lead subjects constitute putative class members, that would still put the putative class well above the 40 person threshold whereby a presumption arises of

---

[1] Plaintiffs do not explain the meaning of these abbreviations. It appears that they may refer to Fox Lake and the FBI's Criminal Justice Information Services division.

> impracticality of joinder. Numerosity is thus satisfied within the confines of the proposed class.

(Pls.' Mot. Class Certification at 4-5.) This argument is based solely on assumptions and conjecture. Plaintiffs do not attach the "leads" spreadsheet to their motion—or, for that matter, any evidentiary material. Their explanation of the spreadsheet's contents and relevance is woefully lacking. Plaintiffs do not submit evidence (or contend) that each "lead" corresponds with a specific individual or a specific individual who was arrested or detained (or questioned) in conjunction with Gliniewicz's death, nor do plaintiffs state how many individuals are listed in the spreadsheet. Defendants point out that 182 of the leads refer to a person; for various spreadsheet entries, the role of the person connected with the lead is identified; and only 69 of the leads are identified as either a suspicious person or a person of interest. (ECF No. 102, Defs.' Resp. at 3.)

In reply, plaintiffs say that defendants' argument is "curious" because the spreadsheet is defendants' own document, its relevance is "self-explanatory," and their explanation that the document was produced in discovery pursuant to negotiations between the parties "adequately demonstrates the relevance and importance of the documents." (ECF No. 113, Pls.' Reply at 2-3.) This argument borders on the frivolous. The Court cannot assume that there is a sufficiently-numerous putative class; rather, it is plaintiffs' burden to demonstrate that. Plaintiffs rely in their opening brief on a document they do not submit to the Court and do not meaningfully explain. In their reply, plaintiffs state that the spreadsheet "is attached as an exhibit," but the attached exhibit is not a spreadsheet. It is merely a one-page document titled "Gliniewicz Investigation," and contains a list of twenty events (mostly "interview" or "lead"), dated September 1, 2015, through October 31, 2015, with corresponding "subjects" (a number of

whom appear to be police officers). Plaintiffs do not attempt to explain who created the document, what it contains, or the relevance of its contents to numerosity. Because plaintiffs fail to submit evidence of a sufficient number of individuals who were arrested or detained in connection with the investigation during the five-day period plaintiffs cite and who are not included in the exceptions to their class definition (or evidence from which an estimate can reasonably be made), they fail to meet their burden of demonstrating numerosity. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties . . . .").

Plaintiffs also fail to meet their burden of showing commonality and predominance. Under Rule 23(a)(2), the commonality provision, there must be "questions of law or fact common to the class." Under Rule 23(b)(3), the predominance provision, "the questions of law or fact common to class members [must] predominate over any questions affecting only individual members." The questions of commonality and predominance can "overlap in ways that make them difficult to analyze separately." *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015). Therefore, the two requirements "often are addressed together," but the predominance requirement is "far more demanding" than the commonality requirement. *Tomeo v. W&E Commc'ns, Inc.*, No. 14 C 2431, 2016 WL 8711483, at *16 (N.D. Ill. Sept. 30, 2016).

In their motion, plaintiffs argue that commonality is "readily satisfied" because each individual listed in defendants' "report of leads was investigated for possible involvement in Gliniewicz's death," and many of those individuals "were detained for questioning based upon circumstances that had nothing to do with anything relevant to Gliniewicz's death." (Pls.' Mot. Class Certification at 6.) Plaintiffs further argue that the "glue" holding the putative class

members' claims together is the common contention that they were "detained because of their race . . . and no other reason." (*Id.* at 7-8.) Plaintiffs describe the circumstances under which three individuals other than the named plaintiffs were detained and questioned in relation to Gliniewicz, as "representative examples provided . . . merely to illustrate that there are indeed common patterns amongst the various detainees." (*Id.* at 6-7.) According to plaintiffs, common issues predominate here because, while the putative class members' claims "may involve individual factual divergences," the claims will not "turn on" those issues but rather whether Gliniewicz's "threadbare description of the alleged perpetrators" gave the officers probable cause or reasonable suspicion, an issue that can be decided in "one fell swoop." (*Id.* at 13-14.)

In response, defendants first point out that a determination would need to be made for each class member at the outset whether the individual was subject to a full custodial arrest requiring probable cause or merely an investigatory stop requiring only reasonable suspicion. Defendants also contend that there is no commonality or predominance because individual determinations would need to be made for each class member as to whether their seizure or stop was reasonable, and the circumstances are different for each class member. The Court agrees. Probable cause to arrest exists where "the totality of the facts and circumstances known to a reasonable arresting officer would support the belief that the suspect has committed or is committing a crime." *Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir. 2002). Likewise, when determining whether an officer had reasonable suspicion to stop someone, courts examine the totality of the circumstances known to the officer at the time, including the officer's experience and the behavior and characteristics of the suspect. *United States v. Mays*, 819 F.3d 951, 955 (7th Cir. 2016). The existence of probable cause or reasonable suspicion to arrest or stop each class member thus depends on the totality of the facts and circumstances known to the

arresting officer or officers, not merely on the information from Gliniewicz. As demonstrated by the allegations of the named plaintiffs as well as the evidence submitted by defendants regarding the three other putative class members to which plaintiffs refer, those circumstances differ for each detainee.[2] Liability, therefore, must be determined on an individual basis. *See Portis v. City of Chi.*, 613 F.3d 702, 705 (7th Cir. 2010) ("Because reasonableness is a standard rather than a rule, and because one detainee's circumstances differ from another's, common questions do not predominate and class certification is inappropriate."); *Harper v. Sheriff of Cook Cty.*, 581 F.3d 511, 515 (7th Cir. 2009) (common issues did not predominate where constitutionality of detention depended on reasonableness of jail's processing delay, which in turn depended on each detainee's individual circumstances). Furthermore, plaintiffs submit no evidence that supports their argument (presented for the most part in their reply brief) that common issues predominate because all putative class members were arrested or detained pursuant to the same "narrow" and "specific" unconstitutional policy. Plaintiffs are not consistent even in identifying that alleged policy; plaintiffs refer to it varyingly as detaining people "based upon circumstances that had nothing to do with anything relevant to Gliniewicz's death"; detaining people "because of their race"; "seizing men pursuant to a vague descriptor proferred by the unreliable Gliniewicz"; "stopping males"; and stopping and arresting "pursuant to a farce of a murder investigation." (Pls.' Mot. Class Certification at 6-7; Pls.' Reply at 5, 7-8.)

---

[2]Indeed, plaintiffs concede that "there may have been unique circumstances involved in each detention or differing suspicions amongst the varying officers" and "there may have been unique intelligence provided as to certain detainees." (Pls.' Mot. at 7-8.)

Having concluded that plaintiffs fail to meet their burden of demonstrating numerosity, commonality, and predominance, the Court need not discuss the remaining Rule 23 requirements. Plaintiffs' claims must proceed as personal rather than class litigation.

## CONCLUSION

George Filenko's motion to dismiss the Third Amended Complaint [98] is granted. The complaint is dismissed without prejudice as to defendant George Filenko. Plaintiffs' motion for class certification [90] is denied. A status hearing is set for June 14, 2018, at 9:30 a.m. to discuss the next steps in the case.

**DATE**: June 6, 2018

_____
**Ronald A. Guzmán**
**United States District Judge**